UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LLOYD TOPPINS,                    Case No. 1:20-cv-31
    Plaintiff,                          McFarland, J.
                                     Litkovitz, M.J.

    vs.

COMMISSIONER OF                  **REPORT AND**
SOCIAL SECURITY,                  **RECOMMENDATION**
    Defendant.

Plaintiff, Lloyd Toppins, brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for disability insurance benefits ("DIB"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), and the Commissioner's response in opposition (Doc. 16).[1]

**I. Procedural Background**

Plaintiff filed his application for DIB in November 2015, alleging disability since November 4, 2015, due to arthritis, heat stroke, migraines, neck and left body pain, bulging disc and bone spurs, back and hip pain, and memory problems. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Thuy-Anh T. Nguyen. Plaintiff and a vocational expert ("VE") appeared and testified at the ALJ hearing on June 7, 2018. On November 8, 2018, the ALJ issued a decision denying plaintiff's DIB application. This decision

---

[1] Plaintiff did not file a reply memorandum to the Commissioner's response in opposition to plaintiff's statement of errors.

became the final decision of the Commissioner when the Appeals Council denied review on November 12, 2019.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2020.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since November 4, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; occipital neuralgia; status-post right-shoulder acromioplasty and rotator cuff repair in 2014; chronic obstructive pulmonary disease (COPD); obstructive sleep apnea; obesity; and affective disorder (20 CFR 404.1520(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except for the following restrictions: He can lift up to ten pounds. He can sit for six hours in an eight-hour workday. He can

stand/walk for six hours in an eight-hour workday. He can occasionally push and/or pull. He can occasionally climb ramps or stairs. He can never climb ladders, ropes or scaffolds. He can occasionally perform overhead reaching with the dominant right-upper extremity. He can frequently handle, finger and feel with the left-upper extremity. He can have no concentrated exposure to fumes, odors, dusts, gases, poor ventilation, or extreme heat. He can have no exposure to unprotected heights, hazardous machinery or commercial driving. He can occasionally operate foot pedals with the left-lower extremity. He can occasionally balance, stoop, kneel, crouch or crawl. He could not walk on narrow, slippery, erratically moving surfaces or uneven terrain. He is capable of understanding, remembering and completing simple, routine tasks, which can be learned by demonstration. He cannot work at a fast pace or meet high production quotas. He can have occasional interaction with the public, coworkers and supervisors. He is capable of working in an environment with occasional changes and changes that are explained in advance.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. The [plaintiff] was born [in] ... 1970 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from November 4, 2015, through the date of this decision (20 CFR 404.1520(g)).

---

[2] Plaintiff's past relevant work was as a radiological control monitor, a light, skilled job; and a decontaminator, a medium, skilled job. (Tr. 38, 407-08).

[3] The ALJ relied on the VE's testimony to find that plaintiff would have been able to perform the requirements of approximately 37,100 unskilled, sedentary jobs in the national economy, such as addresser (6,100 jobs), document preparer (21,000 jobs), and printed circuit assembly screener (10,000 jobs). (Tr. 39, 410).

(Tr. 28-40).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was

5

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges a single issue: that "the ALJ failed to acknowledge the fact that [plaintiff] was involved in a motor vehicle accident when he was younger" and erred by failing to address the "residual effects" from the traumatic brain injury that he suffered from that motor vehicle accident. (Doc. 12 at PAGEID 1644).[4]

In response, the Commissioner alleges that the ALJ reasonably considered and evaluated the fact that plaintiff was involved in a motor vehicle accident "25 years prior." (Doc. 16 at PAGEID 1656). The Commissioner further alleges that plaintiff provided no evidence, other than his own allegations, to confirm the alleged traumatic brain injury that he suffered. (*Id.*). The Commissioner alleges that no medical source of record has linked plaintiff's injuries sustained in the prior motor vehicle accident with his current symptoms and impairments which form the basis of plaintiff's current application for DIB. (*Id.*).

The Court finds the ALJ's decision in this regard is supported by substantial evidence. Contrary to plaintiff's argument, the ALJ's decision expressly acknowledges the fact that plaintiff was involved in a motor vehicle accident prior to his disability onset date. The ALJ specifically referenced plaintiff's testimony at the hearing, during which plaintiff recounted the multiple injuries he sustained from a truck accident. (Tr. 392-93). The ALJ's decision states:

> To provide context for his allegations, [plaintiff] recounted that he sustained multiple work-related accidents. In 1992, [plaintiff] sustained an array of injuries

---

[4] Plaintiff alleges no error in the ALJ's weighing of the various medical opinions in the record. Instead, plaintiff only argues that the ALJ erred by failing to address the motor vehicle accident and the residual effects from the accident in the disability determination. (Doc. 12).

6

> in an accident, including brain injuries. He recalled that he required five months of hospital treatment for these injuries. Subsequently, [plaintiff] remained on disability for about 14 years before returning to work. Nine years after he resumed working and shortly before the alleged onset date, [plaintiff] suffered an incident of heat stroke while working.
> * * *
> [Plaintiff] elaborated on his spine impairments. In the aforementioned accident that occurred years before the alleged onset date, [plaintiff] reportedly broke bones in his cervical spine.

(Tr. 32). Accordingly, the ALJ did not err in this regard.

Plaintiff additionally alleges that the ALJ erred by failing to consider the "residual effects" from the traumatic brain injury that he suffered in the motor vehicle accident. (Doc. 12). Plaintiff specifically argues that "the ALJ's failure to connect [his] well-documented migraines, memory issues, and pain with the traumatic brain injury resulted in the ALJ improperly dismissing the actual impact these problems had on [his] ability to function." (*Id*. at PAGEID 1647). Plaintiff alleges that his traumatic brain injury impacted his "ability to function" and contributed to his "cognitive decline." (Doc. 12 at PAGEID 1645-1646). Plaintiff points to Dr. Regina McKinney's consultative examination on January 28, 2016 to show the alleged impact that his traumatic brain injury had on his ability to function since the motor vehicle accident. (*Id.*; *see* Tr. 887-94).

Dr. McKinney conducted a consultative examination on plaintiff which consisted of a clinical interview and psychological testing. (Tr. 887-94). No medical records were available for Dr. McKinney's review. (Tr. 887). In discussing his "physical health history," plaintiff reported to Dr. McKinney that he was involved in a motor vehicle accident where he allegedly suffered a traumatic brain injury. (Tr. 888). Plaintiff told Dr. McKinney that prior to the motor

7

vehicle accident he was an exceptional student academically and consistently maintained a high GPA, but following the accident, his GPA dropped, and he needed help studying and retaining information. (Doc. 12 at PAGEID 1645). Dr. McKinney administered plaintiff an IQ test which resulted in a verbal IQ of 87, reasoning score of 82, and full-scale IQ score of 71. (Tr. 891). Plaintiff claims that his academic decline following his motor vehicle accident establishes that he suffered, and continues to suffer, "cognitive decline," and the ALJ failed to consider this fact. (Doc. 12 at PAGEID 1646).

Contrary to plaintiff's argument, Dr. McKinney found that there was "not enough data to provide information as to why plaintiff [was] experiencing perceived memory problems." (Tr. 892). Nowhere in Dr. McKinney's report does she attribute plaintiff's alleged cognitive decline as a "residual effect" of plaintiff's traumatic brain injury suffered in the motor vehicle accident that occurred in 1992. Therefore, plaintiff's reference to Dr. McKinney's consultative examination to establish a link between his current symptoms and the prior motor vehicle accident is without a substantial basis in the record.

Plaintiff also alleges that the treatment notes from Certified Nurse Practitioner Calvin Evans provide proof that a correlation exists between plaintiff's current symptoms and his motor vehicle accident and corresponding traumatic brain injury. (Doc. 12 at PAGEID 1647). Mr. Evans, however, did not make such a connection. Instead, Mr. Evans opined that he was "unclear of [the] etiology of [plaintiff's] problems of weakness and memory worsening (short term)." (Tr. 1040; *see* Tr. 1167).

Plaintiff fails to cite to any objective medical evidence in the record that would support his allegation that he suffers residual effects arising from a prior motor vehicle accident that occurred in 1992. Rather, plaintiff's own allegations are inconsistent with the objective medical evidence in the record which establish no such connection between his current cognitive deficits and his prior motor vehicle accident. (*See* Tr. 29, 118-119, 892, 1108, 1040, 1167).

Neurologist Dr. Marsha Smith opined that she did not believe plaintiff's memory problems were due to his prior motor vehicle accident. On September 1, 2015, immediately prior to his disability onset date, plaintiff was transported to the emergency department where he complained of dizziness, weakness, and heat exhaustion. (Tr. 634, 643). Plaintiff was at work, passed out, and reported that he was lightheaded and could not keep his thoughts together. (*Id.*). A CT scan of his brain showed no intracranial abnormality, hemorrhage, mass effect, or midline shift. (Tr. 640-42). On November 4, 2015, plaintiff again presented to the emergency room complaining that he was suffering from a headache, left arm numbness, left sided facial numbness, and confusion. (Tr. 670-71). Plaintiff was diagnosed with a headache, confusion, and paresthesia and told to follow up with Dr. Smith. (Tr. 682).

On September 15, 2015, plaintiff saw Dr. Smith where she reviewed plaintiff's MRI and EEG. (Tr. 644). Dr. Smith noted mild atrophic change with mild associated ischemic white matter disease most prominent in the frontal white matter; no evidence of an acute infarct, hemorrhage or mass; and no change from plaintiff's prior CT scan taken in the emergency room. (Tr. 647). Dr. Smith found that plaintiff's EEG was normal. (*Id*). Dr. Smith assessed plaintiff with headaches, dizziness, and heat stroke and prescribed plaintiff steroids and migraine

medication. (Tr. 646-47). Significantly, Dr. Smith opined that she "does not believe [that plaintiff's poor attention and memory issues] are due to [his] prior accident. His depression is severe and needs to be treated. I think his pattern on cognitive test[s] could be due to his untreated depression." (Tr. 1108).

Likewise, treatment notes from King's Daughters Medical Center similarly establish that plaintiff's current cognitive deficits are likely not attributed to his prior motor vehicle accident and traumatic brain injury:

> [Plaintiff's] wife also brought the issue that [plaintiff] suffered brain trauma in the remote past. I again explained that I would have expected more symptoms closer to the injury rather than a delayed onset of symptoms approximately 15 or 20 years after the traumatic injury. In addition, and again, the brain MRI showed no evidence of structural changes consistent with trauma. In short, I have no adequate explanation for [plaintiff's] symptoms.

(Tr. 1378; *see* Tr. 118-119).

In view of the above evidence, the ALJ did not err by failing to consider the alleged residual effects of plaintiff's remote motor vehicle accident because the substantial evidence of record fails to show a connection between any alleged brain trauma and his cognitive deficits. Plaintiff cites no objective medical evidence in the record to establish a connection between his current deficits, i.e., "well-documented migraines, memory issues, and pain" (Doc. 12 at PAGEID 1647), with his traumatic brain injury suffered in a prior motor vehicle accident. A disability claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512. The burden is on the claimant to furnish medical and other evidence about his impairments and the effects of his impairments on his ability to work.

*Id*. Plaintiff has failed to meet his burden. Accordingly, plaintiff's specific error is without merit and should be overruled.

As best the Court can discern, plaintiff additionally alleges that the ALJ erred in her RFC assessment. Plaintiff argues that "the ALJ's lack of awareness or consideration of [plaintiff's] traumatic brain injury in connection with his lower IQ scores raises concerns about the credibility of the residual functional capacity." (Doc 12 at PAGEID 1646).

The Social Security regulations vest the ALJ with responsibility "for reviewing the evidence and making administrative findings of fact and conclusions of law." 20 C.F.R. § 404.1513a(b). In determining disability, the ALJ will consider the medical opinions in the case record along with the other relevant evidence. 20 C.F.R. § 404.1527(b) (citing 20 C.F.R. § 404.1520b). A claimant's RFC is an assessment of the most that a claimant "can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The Social Security regulations vest the ALJ with the responsibility of assessing an individual's RFC. *See* 20 C.F.R. § 404.1546(c) (the responsibility for assessing a claimant's RFC at the administrative hearing level lies with the ALJ). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). This includes weighing the relevant medical opinions of record. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010). *See also* 20 C.F.R § 404.1527(c)(2).

Plaintiff fails to allege how the ALJ's RFC is not supported by substantial evidence. Contrary to plaintiff's allegations, no medical source of record opined that plaintiff's lower IQ scores were due to his traumatic brain injury. (*See* Tr. 29, 118-119, 892, 1108, 1040, 1167). As

previously discussed, Dr. McKinney found that there was "not enough data to provide information as to why plaintiff [was] experiencing perceived memory problems." (Tr. 892). Moreover, the record reflects the ALJ considered plaintiff's IQ scores in the disability determination but found that "countervailing considerations demonstrate that such scores do not reflect a severe impairment." (Tr. 29). The ALJ stated:

> Although testing administered to the claimant measured the claimant's full scale IQ at 71, the examiner who administered this testing noted 'significant variability among the claimant's scores' (9F/6). Notably, the clinician who administrated this test did not espouse any major restrictions on the claimant to compensate for a cognitive impairment (9F/8-9). Months later, one of claimant's clinicians attributed the claimant's apparent cognitive deficits to the claimant's depression (15F/4).

(*Id.*).

Plaintiff has not shown that the ALJ erred by failing to fully account for his alleged impairments and resulting limitations in the RFC finding. Moreover, plaintiff has not shown, or identified any evidence in the record, that the evidence before the ALJ required the inclusion of greater limitations than those found by the ALJ. The ALJ's RFC included restrictions concerning plaintiff's occipital neuralgia, which account for his migraines, headaches, dizziness, tingling behind his ears and on the left side of his scalp, left-hand numbness and diminished grip. (Tr. 34-35). The ALJ "restricted the claimant to performing a range of work at the sedentary exertional level as well as limited the kinds of tasks and the environment in which the claimant can work to accommodate this condition." (Tr. 35; *see also* Tr. 31-32). Accordingly, the ALJ's RFC is supported by substantial evidence, and plaintiff's assignment of error should be overruled.

### III. Conclusion

For the reasons stated herein, the undersigned recommends that the ALJ's decision should be **AFFIRMED** and that this matter be closed on the docket of the Court.

Date: 2/17/2021

Karen L. Litkovitz
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LLOYD TOPPINS,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:20-cv-31
McFarland, J.
Litkovitz, M.J.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).